UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

WILLIAMS ADVANCED MATERIALS,
INC.,
    *Plaintiff,*

-vs-

TARGET TECHNOLOGY COMPANY, LLC,
    *Defendant and*
    *Third-Party Plaintiff,*

-vs-

CINRAM INTERNATIONAL, INC.,
individually and as successor in interest to
Warner Advanced Media Operations and
WEA Manufacturing, DELUXE MEDIA
SERVICES, INC., HIGH SPEED VIDEO,
INC., INTERNATIONAL DISC
MANUFACTURER, INC., JVC DISC
AMERICA COMPANY, NATIONAL FILM
LABORATORIES d/b/a CREST NATIONAL
OPTICAL STORAGE MEDIA, REPLITECH,
INC., SYMCON, TAPEMATIC USA, and
TAKASAKI CORP. OF AMERICA,

    *Third-Party Defendants.*

Civil Action Nos.
1:03-cv-00276-RJA-JJM
1:03-cv-00280-RJA-JJM
1:09-cv-00096-RJA-JJM

**TARGET'S POST SEPTEMBER 11, 2009 HEARING
SUPPLEMENTAL MEMORANDUM PURSUANT TO
THE COURT'S ORDER OF SEPTEMBER 14, 2009**

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii, iii

I. Introduction ................................................................................................... 1

II. Right to Trial by Jury Requires F.R.C.P. Rule 56
Treatment of the Ownership Issue ...................................................................3

III. Sony DADC's Alleged Equitable Title Does Not Create a
Standing Issue and Does Not Provide a License Defense .....................................8

IV. The January 1992 Invention Agreement Cannot be Read to Convey
Legal Title to Patents Containing New Claims That Came
Into Existence After Nee Left DADC ...............................................................8

V. No Reasonable Juror Could Find as a Matter of Law That Target Does
Not Have Standing Based on the Evidence that Williams has
Submitted to the Court ..................................................................................... 10

VI. The "Law of the Case" Doctrine Does Not Prevent This Court
From Modifying the Opinion or Rulings of the
California District Court ...............................................................................11

CONCLUSION ............................................................................................. 14

# **TABLE OF AUTHORITIES**

*CASE*                                                                                                                                 *Page*

*Autry v. United States*
    424 F.3d 944 (9th Cir. 2005) ..................................................................7

*Careau Group v. United Farm Workers of Am., AFL-CIO*
    940 F.2d 1291 (9th Cir. 1991) ..................................................................7

*DDB Techs., LLC v. MLB Advanced Media, LP*
    517 F.3d 1284 (Fed. Cir. 2008) ....................................................... 4, 6, 10

*Dictograph Prods. Corp. v. Sonotone Corp.*
    230 F.2d 131 (2nd Cir. 1956) .................................................................11

*Dorr-Oliver Inc. v. United States*
    432 F.2d 477 (Ct. Cl. 1970) ....................................................................8

*Estate of Paxton v. Comm'r*
    44 T.C.M. (CCH) 771 (T.C. 1982) ..........................................................9

*Euclid Chem. v. Vector Corrosion Techs.*
    561 F.3d 1340 (Fed. Cir. 2009) ...............................................................9

*Filmtec v. Hydanautics*
    932 F.2d 1546 (Fed. Cir. 1992) ...............................................................8

*Fireman's Fund Ins. Co. v. Railway Express Agency, Inc.*
    253 F.2d 780 (6th Cir. 1958) ...................................................................5

*Homes Group, Inc. v. Vornado Air Circulation Sys., Inc.*
    535 U.S. 826 (2002) ................................................................................4

*Lockwood v. American Airlines, Inc.*
    107 F.3d 1565 (Fed. Cir. 1997) ...............................................................9

*London v. Polishook*
    189 F.3d 196 (2d Cir. 1999) ....................................................................7

*Lucent Techs., Inc. v. Gateway, Inc.*
    543 F.3d 710 (Fed. Cir. 2008) .................................................................9

*Marks Food Corp. v. Barbara Ann Baking Co.*
    274 F.2d 934 (9th Cir. 1960) ...................................................................5

*McCoy v. Mitsubishi Cutlery, Inc.*
    67 F.3d 917 (Fed. Cir. 1995)......................................................................8

*Morrison v. Amway Corp.*
    323 F.3d 920 (11th Cir. 2003).................................................................6, 7

*Power Oasis Inc. v. T-Mobile USA, Inc.*
    522 F.3d 1299 (Fed. Cir. 2008) ............................................................. 9, 10

*Rosales v. United States*
    824 F.2d 799 (9th Cir. 1987).......................................................................6

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*
    284 F.3d 1323 (Fed. Cir. 2002) ..................................................................8

*Schramm v. Oakes*
    352 F.2d 143 (10th Cir. 1965)......................................................................6

*Smithers v. Smith*
    204 U.S. 632 (1907) ....................................................................................5

*Torres-Negrón v. J & N Records, L.L.C.*
    504 F.3d 141 (1st Cir. 2007) ........................................................................7

*United States v. North Carolina*
    180 F.3d 574 (4th Cir. 1999) .......................................................................6

*Williamson v. Tucker*
    645 F.2d 404 (5th Cir. 1981) .......................................................................6

*Zacharia v. Harbor Island Spa, Inc.*
    684 F.2d 199 (2d Cir. 1982) ........................................................................5


**OTHER REFERENCES:**

F.R.C.P. Rule 12(b)1...........................................................................1, 6, 7

F.R.C.P. Rule 56 .................................................................................1, 3, 7

## I. Introduction

To properly resolve the ownership issue, the Court needs to resolve at least the following questions:

Question 1)   Under the Seventh Amendment to the Constitution ("right of trial by jury"), should the Court decide factual issues on this case's ownership issue under F.R.C.P. Rule 56 or under Rule 12(b)1?

Answer 1)   The right to a jury trial over ownership created by the state law tort/claims in this dispute requires Rule 56 treatment.

Question 2)   What difference does it make if Williams/Cinram Parties are asserting Sony DADC's alleged *legal title*, as opposed to its alleged *equitable title*?

Answer 2)   Big difference.  Under the law, only Sony DADC's alleged *legal title* to the patents can provide a standing or licensing defense to third parties to the Nee/Sony relationship.  The law provides that Sony's *equitable title* does not shield the Williams/Cinram Parties even if they have a license under Sony's alleged *equitable title* to the patents.

Question 3)   Under the law, could the January 1992 Invention Agreement automatically assign *legal title* to inventions that first came into being well after the March 30 Letter and which are not described in the letter?

Answer 3)   No.  An assignment of *legal title* for patents must be specific.  *Legal title* to patentable inventions actually "in being" must be assigned to create standing issues for issued patents.  Simply stated, if Sony had filed the March 30, 1998 Letter as a patent application, it could not have filed for or had *legal title* to the six later patents on new alloy compositions because they were not described in the letter.   Under the law, new claims in later continuation patents can be different from inventions in prior

1

originating patents, especially where the compositions are not described in the earlier patent. Thus, Williams/Cinram Parties' arguments relating to the later six patents, are based on Sony's alleged *equitable title*, which does not and cannot save them.

Question 4) Does the evidence presented by the Williams/Cinram Parties support their description of events?

Answer 4) Their evidence is insufficient. A detailed review of the actual evidence reveals that no support exists for the Williams/Cinram Parties' version of events.

Question 5) Under the "law of the case" doctrine, can this Court modify the California Court's opinion and/or rulings?

Answer 5) Yes. At any time prior to judgment, prior rulings may be modified, even if made by another judge.

As discussed herein, all of these questions should be resolved in Target's favor. When these answers are combined with the evidence and law cited in Target's response memorandum, the Motion to Dismiss should be denied.

On the sanctions issue, Target submits that no misconduct has occurred. that is especially the case when one views Mr. Nee's testimony in the context of the technological evidence concerning the unpredictability of alloy science. It is also the case when one realizes that Target's testimony is consistent with its legal position on the legal doctrine of "conception" in the patent laws.

We turn now to answering the questions.

## II. Right to Trial by Jury Requires F.R.C.P. Rule 56 Treatment of the Ownership Issue

No less than six state law tort claims in Williams' complaint contain factual allegations that require the jury to decide whether Target owns the patents in suit (Doc. 109, Counts I-IX):

1) Count V contests the Williams-Target patent license and reads, "Because of the … lack of ownership of the TTP Patents… the Target license was and is void from its inception…" (Doc. 109, ¶85)

2) Count VI alleges fraud and reads that Target knew that the TTP Patents "were subject to Nee's Employment Patent Agreement with DADC and therefore not the property of either Nee or Target." (Doc. 109, ¶92)

3) Count VII alleges unjust enrichment, incorporates the allegation of lack of ownership from preceding paragraphs, and reads "Target unjustly received money from Williams through its collection of improper royalties…" (Doc. 109, ¶ 100)

4) Count VIII alleges unfair competition under the Lanham Act and reads that Target knew that the TTP Patents "were subject to Nee's Employee Patent Agreement with Nee and therefore the property of neither Nee nor Target." (Doc. 109, ¶ 105)

5) Count IX alleges deceptive trade practices, incorporates the allegation of lack of ownership from preceding paragraphs, and reads that Target's actions "were wrongful and intentional and were done deliberately with an intent to benefit Target and harm Williams …"" (Doc. 109, ¶ 118)

6) Count X alleges interference with contractual relations, incorporates the allegation of lack of ownership from preceding paragraphs, and reads that Target's actions "were done in whole or in part for the purpose of interfering with Williams' contracts, business relationships ..." (Doc. 109, count X, ¶ 125)

Target's answer asserted a compulsory patent-infringement counterclaim. (Doc. 251, Answer). *Homes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 828 (2002) (Patent infringement claims are compulsory counterclaims to a state law tort claim.) Thus, a shotgun wedding occurred between Williams' state law tort claims and Target's federal patent infringement counts. Both sides have asserted their right to a jury trial, both offensively and defensively. Both have a Seventh Amendment right to a jury trial. That is, Williams is entitled to a jury trial on the Counts "V-X", and Target is entitled to a jury trial on its defense of those Counts.

This same allegation of a lack of Target's ownership of the patents-in-suit forms the basis for the Williams Parties' challenge to this Court's subject matter jurisdiction over Target's compulsory Counterclaims. (Ct. Dkt. No. 255, 258, Motion to Dismiss) Consequently, the same fact questions relating to whether Target owns the patents-in-suit must be resolved in order to decide both the jurisdictional challenge as well as the merits of Counts "V-X". Where the factual underpinnings of jurisdiction are enmeshed with the merits of the dispute, intertwinement arises. *See e.g.*, *DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1291 (Fed. Cir. 2008).

The concern raised by the intertwinement of jurisdictional and substantive issues is that a party's right to a jury trial on the merits is

4

extinguished by a court that declines to exercise jurisdiction. This concern was expressed over 100 years ago by the Supreme Court in *Smithers v. Smith*, 204 U.S. 632 (1907). In *Smithers*, the Court cautioned district courts to exercise restraint in dismissing intertwined cases,

> lest, under the guise of determining jurisdiction, the merits of the controversy between the parties be summarily decided without the ordinary incidents of a trial, including the right to a jury. For it must not be forgotten that where, in good faith, one has brought into court a cause of action which, as stated by him, is clearly within its jurisdiction, he has the right to try its merits in the manner provided by the Constitution and law, and cannot be compelled to submit to a trial of another kind.

*Id.* at 645. In reversing the district court's dismissal for lack of jurisdiction, the Supreme Court in *Smithers* characterized the judge's action as "exceed[ing] his authority" because "in determining the jurisdiction, [he] in effect decided the controversy between the parties on the merits." *Id.* at 646.

Hence, under *Smithers*, a court must not decide a jurisdictional challenge in favor of dismissal where in so doing the court makes findings of fact that also go to the substantive controversy, thereby usurping a party's right to a jury trial on the merits. The doctrine enunciated by the Supreme Court in *Smithers* dates from at least as early as 1907 and has become known as intertwinement or enmeshment. For over 100 years, courts, including the Second Circuit, have followed this principle. *See e.g., Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see also Fireman's Fund Ins. Co. v. Railway Express Agency, Inc.*, 253 F.2d 780, 783-84 (6th Cir. 1958); *Marks Food Corp. v. Barbara Ann Baking Co.*, 274 F.2d 934, 936 (9th Cir. 1960)

5

(reversing district court's finding that defendant's business was not shown to affect interstate commerce because it violated the defendant's Seventh Amendment right to have the basic issue in the case decided by the jury); *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965) (stating that "[t]he purpose of postponing a determination upon a jurisdictional question when it is tied to the actual merits of the case is to prevent a summary decision on the merits without the ordinary incidents of a trial including the right to jury"); *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987); *DDB*, 517 F.3d at 1291 n.4.

The regional circuit case law on intertwinement points out the unique procedural issue raised by intertwinement. Ordinarily, a proper Rule 12(b)(1) motion challenging subject matter jurisdiction permits a district court to independently weigh facts. In short, in such cases, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issues." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quotation omitted). A district court, however, "should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction *do not implicate the merits." Id.* (quotation omitted).

Where, as here, the jurisdiction challenge implicates the merits of the parties' dispute, the proper course is to deal with the challenge as a direct attack on the merits. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). In

such cases, the district court employs the standard applicable to a motion for summary judgment—a standard that places much greater restriction on a district court's discretion. *Morrison*, 323 F.3d at 925; *see also London v. Polishook*, 189 F.3d 196, 198 (2d Cir. 1999) (quoting *Careau Group v. United Farm Workers of Am., AFL-CIO*, 940 F.2d 1291, 1293 (9th Cir. 1991)); *Torres-Negrón v. J & N Records, L.L.C.*, 504 F.3d 141, 163 (1st Cir. 2007); *Autry v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). That is, "[w]here the relevant facts are dispositive of both the 12(b)(1) motion and portions of the merits, the trial court should grant the motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Torres-Negrón*, 504 F.3d at 163 (quotations omitted). Otherwise, if the defender of the motion to dismiss "presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts, then the case proceeds to trial, so that the factfinder can determine the facts, and the jurisdictional dispute will be reevaluated at that point." *Id.*; *see also Autry*, 424 F.3d at 956 (warning courts in intertwinement cases that they "must not weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue for trial") (quotations omitted).

Due process requires this Court to resolve ownership under the F.R.C.P. Rule 56 Summary Judgment Standards and if material factual disputes exist, then through a jury trial.

### III. Sony DADC's Alleged Equitable Title Does Not Create a Standing Issue and Does Not Provide a License Defense

Do the Williams defendants and Cinram have a defense to Target's patent infringement claims if Sony is found to have ever had *equitable title*, as opposed to *legal title*, to one or more of the patents in suit?

The answer is no. They do not have a defense. "In patent litigation between private parties, equitable rights of ownership of strangers to the suit cannot be raised as defenses against the *legal title*-holder of a patent." *Dorr-Oliver Inc. v. United States*, 432 F.2d 447, 451 (Ct. Cl. 1970) cited for support in *Filmtec v. Hydanautics*, 932 F.2d 1546, 1550 (Fed. Cir. 1992). It is undisputed that Target is the *legal title* holder of record. Sony's or DADC's alleged equitable rights cannot provide Williams with a defense. Williams' status as an alleged Sony or DADC licensee to such alleged equitable rights is thusly also irrelevant. *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1333-34 (Fed. Cir. 2002). Moreover, Sony never exercised such alleged equitable rights and, ultimately, conceded them. Finally, the alleged license only raises an affirmative defense, not a standing issue. *McCoy v. Mitsubishi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995). Therefore, only Sony DADC's alleged legal title is relevant.

### IV. The January 1992 Invention Agreement Cannot Be Read to Convey Legal Title to Patents Containing New Claims of Invention That Came Into Existence After Nee Left DADC

As explained in Target's response brief, there is no dispute of material fact that the claimed inventions of six of the patents in suit ('616, '219, '384, '947, '750, '659, and '660) came into existence after Mr. Nee left DADC. (Doc. 310, p. 4) Williams own expert witness concedes that the specific compositions and ratios of the claims of these

six patents are not spelled out in the March 30, 1998 letter upon which Williams relies to challenge Target's standing. (Doc. 257-3 Report 8, 14, 18, 19, 33, 34).

The rules of contract and patent law do not permit the interpretation of the January 1992 Invention agreement to convey *legal title* to these six patents. "It is a truism of patent practice that transfers of patent property require specificity as the property transferred." *Euclid Chem. v. Vector Corrosion Techs.*, 561 F.3d 1340, 1349 (Fed. Cir. 2009) (Newman, J., dissenting). *See e.g.*, *Estate of Paxton v. Comm'r*, 44 T.C.M. (CCH) 771 (T.C. 1982) ("During all times herein, it was well-established trade practice for patent lawyers to describe and identify inventions with specificity in legal instruments licensing the right to exploit, assigning or otherwise affecting property rights in the invention."). Cited in *Euclid Chem.* at 1349.

As relevant to standing, the language of the January 1992 invention is limited to the assignment of *legal title* for patents containing inventions or technological innovations existing during the period of Nee's employment with DADC. (Doc. 256-5) As there is no dispute that the claimed inventions of these six patents came into existence after this period, the Court should find as a matter of law that Target has standing to assert these six patents against Williams.

Target has cited the law under the *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997) and *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710 (Fed. Cir. 2008) that the March 30, 1998 letter could not have resulted in patents on the new alloy compositions because it did not describe them. The case of *Power Oasis Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306-10 (Fed. Cir. 2008) makes clear that later continuation patents can be patentably distinct from an earlier filed original application. In that case, the later continuation patent was found to be unsupported by the earlier

original patent because there was no written description of the later claimed invention in the original patent. *Id.* The later six patents in this case similarly are unsupported and legally different from the original '889 patent. The *DDB* case only finds a lack of standing for inventions that were "in being" and therefore, automatically assigned. *DDB*, 517 F.3d at 1290. The later six patents, under *Power Oasis*, were not "in being" in 1998.

The Williams/Cinram Parties' arguments over whether the later inventions were allegedly derived from the March 30, 1998 letter only raise *equitable title* rights in Sony and not *legal title* rights. As discussed, Sony's alleged and unexercised *equitable title* does not serve as a defense for Williams by license, by standing, or otherwise.

### V. No Reasonable Juror Could Find as a Matter of Law That Target Does Not Have Standing Based on the Evidence That Williams Has Submitted to the Court

Williams' motion is filled with characterizations of events that are not supported by the cited evidence. Admittedly, it is tedious to go through the record cites, but the liberties taken by Williams require it. Such a review demonstrates that Williams is not fairly describing the evidence.

Target submits that under the Summary Judgment standard, Williams has failed to present sufficient evidence to even support a reasonable inference of its concocted version of events. No reasonable jury could find otherwise. Mr. Nee negotiated with Sony for a position based in Japan. His stay at DADC in 1992 was temporary, as was the January 1992 Invention Agreement. It was replaced by the April 1992 Invention Agreement which, by its terms, could not and did not convey *legal title* to Sony. To the extent it could arguably be a basis for *equitable title*, it provides no defense to the

Williams/Cinram Parties under either theory of standing or license. (*Supra* Section III, p. 8)

**VI.    Under The "Law of the Case" Doctrine, This Court Can Modify the Opinion or Rulings of the California District Court**

It is well established that rulings made by a district judge are subject to modifications by the district judge at any time prior to final judgment, and may be modified to the same extent if the case is transferred to another district judge. *Dictograph Prods. Corp. v. Sonotone Corp.*, 230 F.2d 131, 134-36 (2nd Cir. 1956). As explained in *Dictograph* by Justice Learned Hand, even when an issue has been decided by a district judge, another judge may nevertheless come to a different conclusion. *Id.*

## CONCLUSION

Both the Motion to Dismiss and for Sanctions should be denied.

DATED: September 28, 2009         /s/Spiro Bereveskos
                                  Spiro Bereveskos (*pro hac vice*)
                                  Steve E. Zlatos (*pro hac vice*)
                                  Kurt N. Jones (*pro hac vice*)
                                  WOODARD, EMHARDT, MORIARTY,
                                       McNETT & HENRY LLP
                                  111 Monument Circle, Suite 3700
                                  Indianapolis, IN  46204-5137
                                  Phone: (317) 634-3456
                                  Fax: (317) 637-7561
                                  Email: judy@uspatent.com
                                         szlatos@uspatent.com
                                         kjones@uspatent.com

                                  Ken E. Steelman (*pro hac vice*)
                                  CORBET, STEELMAN & SPECTER
                                  A Professional Law Corporation
                                  18200 Von Karman Avenue, Suite 900
                                  Irvine, California 92612-1023
                                  Tel: (949) 553-9266
                                  Fax: (949) 553-8454
                                  Email: ksteelman@corbsteel.com

-and-

Cheryl Smith Fisher
MAGAVERN, MAGAVERN & GRIMM
1100 Rand Building
14 Lafayette Square
Buffalo, NY 14203
Phone: (716) 856-3500
Fax: (716) 856-3590
E-mail: cfisher@magavern.com

***Attorneys for Target Technology
Company, LLC***

#627382