UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAMS ADVANCED MATERIALS, INC.,<br><br>*Plaintiff*,<br><br>-vs-<br><br>TARGET TECHNOLOGY COMPANY, LLC,<br><br>*Defendant and Third-Party Plaintiff*,<br><br>-vs-<br><br>CINRAM INTERNATIONAL, INC., individually and as successor in interest to Warner Advanced Media Operations and WEA Manufacturing, *et al.*,<br><br>*Third-Party Defendants*. | Civil Action Nos.<br>**1:03-cv-00276-RJA-JJM**<br>1:03-cv-00280-RJA<br>1:09-cv-00096-RJA-JJM |

**THE WILLIAMS PARTIES' SUPPLEMENTAL MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND FOR SANCTIONS**

Pursuant to the Court's instructions at the oral argument held on September 11, 2009, the Williams Parties submit this supplemental memorandum of law in further support of their motion to dismiss and for sanctions.

**ARGUMENT**

**A.   Nee's Patent and Confidential Information Agreement With DADC Was
In Force Until At Least March 31, 1998.**

Both in its papers and at oral argument, Target went to great lengths to mischaracterize Nee's Patent and Confidential Information Agreement with DADC as an "employment" agreement. It is not, and it specifically says that it is not. (*See* DADC Agreement, Ex. 4 ("This

agreement . . . does not in any way restrict my right or the right of DADC to terminate my employment.").) The DADC Agreement is a patent and confidential information agreement that governed what would happen if Nee participated in any inventions or other technological innovations while working for DADC, or while he had access to DADC's confidential business information, and what he could and could not do with that confidential information.

In California, Judge Carter failed to appreciate the significance of this nuance and looked *only* at the question of whether Nee was an employee of DADC during the uninterrupted period of time from when he signed the agreement in 1992, until he left DADC in 1998. Yet, the proper inquiry for purposes of this motion is not whether Nee was an employee during the entire period – though clearly he was – but rather whether adequate consideration under the DADC Agreement was provided to Nee during that period. It was.

These facts are irrefutable and clearly established by the record in this case. Nee's agreement with DADC, which was executed just a few weeks before Nee's trip to Japan and in anticipation of his temporary assignment there, explicitly states that it was made in consideration of at least any one the following: (i) Nee's "employment or continuing employment in *any* capacity" with DADC (emphasis added); (ii) "salary or wages paid" by DADC; and/or (iii) Nee's "being permitted access to information pertaining to the business of DADC." There plainly is no failure of consideration here, nor has Target ever made such an allegation. As is amply set forth in the Williams Parties' prior briefs, Nee did continue to be employed in some capacity by DADC; DADC paid him wages over the entire time period from 1991 through March 31, 1998 (including while he was temporarily assigned in Japan); and Nee had access to DADC's confidential business information throughout this time period. (*See*, *e.g.*, Williams Parties' Reply Brief, pp. 3-4.)

### B. DADC Owns And Has Legal Title To All Of The Patents-in-Suit.

As set forth in the Williams Parties' Reply (pp. 12-17), DADC owns all of the Patents-in-Suit because all of those patents originate from (or are minor, obvious variations of) Nee's March 30, 1998 letter and draft patent application. Target even admits that claims in three of the patents-in-suit, U.S. Patent Nos. 6,007,889, 6,280,811, and 6,852,384, are directed to silver alloys that are *entirely* within the scope of the silver alloys identified by Nee in that draft patent application. (*See* Target's Opposition Brief, p. 9.) If the Court necessarily determines that Nee's agreement with DADC was in force until his last day at DADC on March 31, 1998 – and it should – Target's admission means that ownership of these patents transferred to DADC by operation of law. *See DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289-90 (Fed. Cir. 2008); *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991). Target's failure to address these patents in its supplemental brief is telling and underscores the fact that Target cannot come up with a plausible argument against the conclusion that DADC owns and has legal title to at least these three patents as a matter of law.

With respect to the remaining six patents (Nos. 6,554,616, 6,841,219, 6,896,947, 6,905,750, 7,314,659, and 7,314,660), Nee's DADC agreement is clear that Nee prospectively assigned to DADC his "entire, right, title and interest in and to each invention, technological innovation, including all rights to obtain, perfect and enforce patents and other proprietary interests therein." (*See* DADC Agreement, Ex. 4.) This prospective assignment was broad enough to include ideas and technological innovations that were patentable, as well as those that were not patentable, or that required additional work to become patentable. It also was broad enough to include minor and obvious variations of ideas and technological innovations, which Nee himself aptly described in the March 30, 1998 draft patent application as "such changes and modifications as fall within the spirit of the invention." (*See* March 30, 1998 Letter and Draft

Patent Application, p. 10, Ex. 19.) Where Nee prospectively assigned his "entire, right, title and interest" to DADC, and where the Williams Parties have shown with ample evidence that the alloys in the remaining six patents are mere minor and obvious variants that are within the "spirit" of the March 30, 1998 draft patent application, the law is clear that DADC has legal title to those patents, not merely equitable title. *See, e.g., DDB*, 517 F.3d at 1289 90; *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991).

C.  **Any Factual Issues Should Be Resolved By The Court At An Evidentiary Hearing Pursuant to Federal Rule of Civil Procedure 12(i).**

Should the Court find that it needs to resolve questions of fact to determine if it has jurisdiction, it can and should hold an evidentiary hearing under Rule 12(i) to resolve those issues. Doing so now will allow the Court to avoid a burdensome and unnecessary claim construction hearing and trial. The Court can and should put Target to its proof now, before this case is allowed to drag out any longer.

After six years of litigation and expense, the Williams Parties simply want this threshold issue of standing resolved. Target plainly does not. In an attempt to avoid an evidentiary hearing, Target argues that the Court should either apply the Rule 56 summary judgment standard to the Williams Parties' motion to dismiss or defer a decision altogether until trial. According to Target, the factual issues concerning standing are so "intertwined" with the merits of certain unrelated tort claims asserted, not by Target, but by plaintiff Williams Advanced Materials, Inc. ("WAM"), that it would be inappropriate for the Court to resolve them now or resolve them using the Rule 12(b)(1) standard of review.[1] Target's argument misconstrues the doctrine of intertwinement as it relates to motions to dismiss under Rule 12(b)(1) and should be rejected.

---

[1] The tort claims at issue have been asserted by WAM, and not by the other Williams Parties or third-party defendant Cinram International, Inc.

When faced with a motion to dismiss for lack of subject matter jurisdiction based on standing, the party asserting the claim for which dismissal is sought has the burden of establishing that it has standing to sue and, therefore, that the Court has jurisdiction over the claim. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Courts look to the extent to which the jurisdictional facts are intertwined with the merits of the claim for which dismissal is sought. *See Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) ("When deciding whether jurisdiction is intertwined with the merits of a particular dispute, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.").

The purpose of doing so is to avoid a situation where, because of the factual overlap between the merits of the claim and the question of jurisdiction, the merits are effectively decided using the dismissal standard as opposed to the standards applicable to summary judgment and/or trial. *See CNA v. United States*, 535 F.3d 132, 145 (3rd Cir. 2008) (the doctrine of intertwinement exists so that "district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery."). This situation most often arises in litigation where subject matter jurisdiction is conferred by the same statute that creates the substantive cause of action. *See*, *e.g.*, *Hamm v. United States*, 483 F.3d 135, 137-38 (2d Cir. 2007); *Morrison v. Amway Corp.*, 323 F.3d 920, 926 (11th Cir. 2003). In those situations, overlap between the merits and jurisdiction is inherent, and courts use the doctrine of intertwinement to make sure they are applying the proper standard.

That is not the situation in this case. Here, the party asserting patent infringement (Target) lacks standing to bring that claim because it does not own the patents-in-suit. Deciding that issue has nothing to do with the whether or not the Williams Parties infringe the patents-in-

suit pursuant 35 U.S.C. § 271. Indeed, in a factual context nearly identical to that presented here, the Federal Circuit agreed with the "majority of regional circuits" that the proper inquiry was the *degree* of intertwinement between the "jurisdictional facts and facts underlying the substantive claim." *DDB*, 517 F.3d at 1291-92. The court held, based on this standard, that resolution of all jurisdictional facts by the trial judge – not a jury – was appropriate because factual issues concerning patent ownership and assignment pursuant to an agreement are not sufficiently intertwined with the underlying patent infringement claim and related defenses. *See id.* The court reached this conclusion even though the defendant in *DDB* contended that, by virtue of the ownership issue, it was a licensee as to past damages. *See id.* at 1288. Notwithstanding overlap between standing and liability issues, the court held that the ownership issue could be decided at an evidentiary hearing and without submitting the issue to the jury. *See id.*

Faced with this controlling law, Target, without citing any supporting case law on point, asks the Court to expand the doctrine of intertwinement to include situations where there may be overlap between the jurisdictional facts and the merits of other causes of action – tort claims – unrelated to the motion to dismiss.[2] Yet, the proposition advanced by Target does not serve the purpose that gave rise to the doctrine of intertwinement in the first place. That is, the doctrine of intertwinement is intended to preclude courts from using the dismissal standard to dispense with causes of action on the merits that would otherwise be evaluated pursuant to the summary judgment standard. In this case, the Court's decision on standing will not dispense with anything

---

[2] None of the cases cited by Target in its supplemental brief (pp. 5-7) support its argument that the doctrine of intertwinement includes situations were there is overlap between jurisdiction and the merits of unrelated claims not subject to the motion to dismiss. In fact, the cases cited by Target actually support the position advanced by the Williams Parties, namely that the doctrine is limited to situations where the jurisdictional facts are intertwined with the merits of the claim for which dismissal is sought. *See*, *e.g.*, *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007) ("First, the court must determine whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action.*"*); *Morrison*, 323 F.3d at 925 ("We have cautioned, however, that the district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.").

other than Target's infringement claims. Where the Federal Circuit has already held that there is not significant intertwinement between the question of standing in this context and infringement claims, the issue of intertwinement never comes into play.

Even if intertwinement were a concern, which it is not, it is not present here in any significant degree. The primary thrust of this case is and always has been patent infringement. While WAM has asserted a number of state law claims, those claims are ancillary to the primary issues being litigated in this case. Moreover, only two of those state law claims even mention Target's lack of ownership of the patents-in-suit: (i) Count VI for Fraud in the Inducement concerning the May 2000 license agreement between WAM and Target; and (ii) Count VIII for Unfair Competition concerning Target's unfair use of the patents-in-suit in competition with WAM. (*See* Supplemental and Second Amended Consolidated Complaint [Docket No. 109].) Yet, those claims, minus the reference to the ownership issues, were asserted in this case years before WAM first learned that Target did not own the patents. (*See* Consolidated and Amended Complaint [Docket No. 24], Third, Fifth and Eighth Causes of Action). The subsequent reference to the ownership issue in Counts VI and VIII in WAM's Supplemental and Second Amended Consolidated Complaint simply provided an additional basis for those claims that was discovered after WAM initially asserted them.[3]

Moreover, while the Court's decision on standing arguably may narrow the issues to be tried on one of multiple theories of liability under Counts VI and VIII (*i.e.*, by answering the legal question of whether Target owns the patents-in-suit), that decision would in no way relieve WAM from its burden of proving the other essential elements of those claims, or from having to prove its alternate theories of liability. Under these circumstances, while there may be some

---

[3] The claim for fraud in the inducement is directed to the May 2000 license agreement between WAM and Target. Not all of the patents-in-suit were subject to that agreement. Rather, the only patents licensed under that agreement were Nos. 6,007,889, 6,280,811, and 6,451,402 (which is not asserted by Target in this case).

limited overlap on one issue, it cannot be said that the overlap between standing and Counts VI and VIII is at such a high level that the two issues are *significantly* intertwined. *See*, *e.g.*, *CNA*, 535 F.3d at 144 (comparing the standards in various regional circuits for whether, in the context of a Rule 12(b)(1) motion, issues are "significantly" intertwined).

## CONCLUSION

The Williams Parties respectfully request that the Court dismiss Target's claims with prejudice, and that the Court award the Williams Parties their attorneys' fees and costs incurred in the defense of this lawsuit.

| | |
|---|---|
| **DATED:** September 28, 2009 | **HISCOCK & BARCLAY, LLP** |
| | By:    s/ Douglas J. Nash<br>Douglas J. Nash<br>John D. Cook<br>One Park Place<br>300 South State Street<br>Syracuse, New York 13202<br>Tel: (315) 425-2828<br>E-Mail: dnash@hblaw.com<br>E-Mail: jcook@hblaw.com |
| | Christopher E. Blank<br>200 HSBC Plaza<br>100 Chestnut Street<br>Rochester, New York 14604<br>Tel: (585) 295-4400<br>E-Mail: cblank@hblaw.com |
| | *Attorneys for the Williams Parties* |

# CERTIFICATE OF SERVICE

I, Douglas J. Nash, counsel for the Williams Parties, hereby certify that on September 28, 2009, I electronically filed the foregoing Supplemental Memorandum of Law using the CM/ECF system, which sent electronic or other notification of such filing to all counsel of record in this case.

s/ Douglas J. Nash
Douglas J. Nash
