UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAMS ADVANCED MATERIALS, INC.,

                    Plaintiff,

v.

TARGET TECHNOLOGY COMPANY, LLC,

                    Defendant and
                    Third-Party Plaintiff,

v.

CINRAM INTERNATIONAL, INC., et al.,

                    Third-Party Defendants.
_____

**REPORT,
RECOMMENDATION
AND ORDER**

03-CV-00276(A)(M)

        Before me is the motion of plaintiff Williams Advanced Materials, Inc. and various third-party defendants (collectively referred to as the "Williams Parties") to dismiss the patent infringement claims and counterclaims of defendant and third-party plaintiff Target Technology Company, LLC ("Target"), based upon lack of standing and litigation misconduct [255][1] . That motion, in which third-party defendant Cinram International, Inc. ("Cinram") joins [270], has been referred to me by Hon. Richard J. Arcara  for preparation of a Report and Recommendation [282].

        The Williams Parties have also moved to stay discovery pending resolution of the motion to dismiss [271], and Target has moved to strike portions of deposition testimony offered in support of the motion to dismiss [328].  Following oral argument on September 11, 2009, the parties submitted supplemental briefs [341, 342, 343].

---

[1]        Bracketed references are to the CM/ECF docket entries.

At oral argument, I stated that I was considering recommending the scheduling of an evidentiary hearing pursuant to Fed. R. Civ. P. ("Rule") 12(i) to resolve factual questions concerning Target's ownership of the patents at issue (and, therefore, its standing to sue for infringement). However, upon further review of the various agreements which have been submitted in connection with the motion to dismiss, I now conclude that there are no genuine factual issues as to Target's ownership of the patents as of June 8, 2009, the date on which the infringement claims were asserted.

For the following reasons, I  recommend that the motions to dismiss [255, 270] be denied  to the extent that they seek dismissal based upon Target's lack of standing to sue for patent infringement, and deferred (until trial) to the extent that they seek dismissal as a sanction for Target's alleged litigation misconduct. Furthermore, I order that the motion to stay discovery [271] and the motion to strike testimony [328] be denied.

## BACKGROUND

Although this action has a lengthy procedural history (both in this court and in California), only those facts directly relevant to the pending motions will be discussed. Plaintiff Williams Advanced Materials, Inc. commenced this action in on April 7, 2003 [1], seeking, among other forms of relief, a declaration of non-infringement and invalidity of certain patents which are directed to the use of a variety of metal alloys for the semi-reflective or reflective layers of optical storage media such as DVDs.[2]   The alleged inventor of those patents is Mr. Han Nee, who is Target's founder and president. Target counterclaimed for infringement of those patents [27].

---

[2]        Williams also commenced a related action against Target, which was subsequently consolidated with this action (#03-cv-0280(A), [23]).

In September 2003, Williams moved for a preliminary injunction, seeking to enjoin Target from suing its customers [32]. Following a hearing, that motion was denied by this Court on August 11, 2004 [91], and the denial was subsequently affirmed by the United States Court of Appeals for the Federal Circuit [99].

In September 2004, Target commenced an action against the Williams Parties in the United States District Court for the Central District of California, alleging infringement of a related U.S. Patent, No. 6,790, 503 (the "'503 patent") [149, ¶7]. The parties agreed that discovery in that action would also apply to this action [149, ¶11].

In the course of the California litigation, District Judge David O. Carter issued two opinions analyzing at length the parties' respective positions regarding ownership of the '503 patent and U.S. Patent No. 6,007,889 (which is one of the patents at issue in this case), as well as the Williams Parties' motion for sanctions against Target: <u>Target Technology Co., LLC v. Williams Advanced Materials, Inc.</u>, 2007 WL 6201689 (C.D.Cal. 2007) ("<u>Target I</u>"), and <u>Target Technology Co., LLC v. Williams Advanced Materials, Inc.</u>, 2008 WL 5002935 (C.D.Cal. 2008) ("<u>Target II</u>").[3] On January 26, 2009, Judge Carter transferred the remaining claims in the California action to this court (09-cv-0096 [679]), and that action has now likewise been consolidated with this action [276].

Williams' Supplemental and Second Amended Consolidated Complaint [109], filed on February 23, 2006, seeks a declaration of invalidity and non-infringement of several patents issued to Mr. Nee [109, ¶¶ 67-78]. In addition, Williams seeks damages for being fraudulently induced to enter into a license agreement with Target concerning several of those

---

[3] These opinions have also been submitted in connection with the pending motion to dismiss. Nash Declaration [256], Ex. 17 and 18.

patents, alleging that because Mr. Nee had assigned the rights to those patents to his employer, Digital Audio Disc Corporation ("DADC") in Terra Haute, Indiana pursuant to a January 8, 1992 "Employee Patent and Confidential Information" agreement (the "DADC Patent Agreement"), neither he nor Target were the owners of those patents at the time of the license agreement [109, ¶¶15-31, 96-98].

In its Amended Answer and Third Amended Counterclaims [251] and its Amended Third Party Complaint [252], both filed on June 8, 2009, Target alleges that the Williams Parties and Cinram have infringed nine U.S. patents allegedly invented and assigned to them by Mr. Nee.[4] Instead of answering those claims, the Williams Parties have moved to dismiss them pursuant to Rule 12(b)(1), arguing that because the patents were within the scope of the DADC Patent Agreement, they belong to DADC rather than to Mr. Nee or Target, and that Target therefore lacks standing to sue for infringement. Williams Parties' Memorandum of Law [258], pp. 10-18. In the alternative, they argue that the court should exercise its inherent authority to dismiss the infringement claims as a sanction for Mr. Nee's and Target's misrepresentations as to when Mr. Nee developed the inventions at issue. Id., pp.18-25.

In addition, the Williams Parties also seek a stay of discovery pending resolution of the motion to dismiss the infringement counterclaims, arguing that if the motion is granted, "the case effectively will be over, and no further discovery will be required". Williams Parties' Memorandum of Law [272], p. 3. While they admit that "the Williams Parties' state law claims

---

[4] Nos. 6,007,889 (the "'889 patent") (Nash Declaration) [256], Ex. 5); 6,280,811 (the "'811 patent") (id., Ex. 6); 6,554,616 (the "'616 patent") (id., Ex. 7); 6,841,219 (the "'219 patent") (id., Ex. 8); 6,852,384 (the "'384 patent") (id., Ex. 9); 6,896,947 (the "'947 patent") (id., Ex. 10); 6,905,750 (the "'750 patent") (id., Ex. 11); 7,314,659 (the "'659 patent") (id., Ex. 12); and/or 7,314,660 (the "'660 patent") (id., Ex. 13).

will remain" even if the infringement claims are dismissed (id., p. 3, n. 5), they argue that these claims "will not require further discovery". Id.

In opposing the motions, Target argues that the patents at issue are not within the scope of the DADC Patent Agreement (Target's Response [310], pp. 4-10), and that the DADC Patent Agreement was in any event superseded, initially by an agreement which Mr. Nee executed with Sony Corporation on April 16, 1992 (the "Sony Patent Agreement")[5] and thereafter by a 2008 "Settlement and Cross License Agreement" with Sony Corporation and DADC (Nash Declaration [256], Ex. 35). Target's Response [310], pp. 13-15, 23-25. Target further argues that neither Mr. Nee nor Target are guilty of misrepresentations warranting dismissal of the infringement counterclaims. Id., pp. 29-35. Target also moves to strike portions of the deposition testimony of Sony representative Michael Mitchell relating to Mr. Nee's employment history, arguing that Mr. Mitchell lacks personal knowledge on that subject [328, 329].

Many of the arguments advanced by the parties in connection with the currently pending motions were previously made to Judge Carter in the California litigation. Therefore, the following extensive factual background, quoted (in italics) from Target I, supra, (2007 WL 6201689, **3-7) is pertinent to the motions:

"*Nee founded Target in 1998 to develop alternative metal alloys to gold and silicon. Nee founded Target while he was an employee of [DADC], a Sony subsidiary. DADC was the first optical disc manufacturing facility in the U.S.; it began operations in 1984 . . . . On*

---

[5]     The Sony Patent Agreement (Nee Declaration [288], Ex. F) provides as follows: "I hereby recognize that my work at Sony facilities may result in inventions (any discoveries, improvements or ideas, whether or not patentable or copyrightable) made by me, and agree that all right and title to Inventions made by me during the period and one (1) year thereafter, shall belong to SONY if such subsequent Inventions arise out of my work or the information I received from SONY during that working period".

-5-

December 11, 1991, Sony Music offered Nee a position at Sony Disc Technology ('SDT') in Japan [256, Ex. 27].[6] While awaiting his work visa from the Japanese Consulate, Nee joined DADC . . . in January of 1992. One term of his employment at SDT was that he would be active on all DADC employee plans while in Japan. *Id.* Sony's offer also provided that DADC would pay Nee $14,600 per year, in addition to his base salary from SDT, while he was on assignment in Japan. *Id.* Under the agreement, after his first year at SDT, DADC would pay Nee an additional $7,300 per year incentive payment; for a total of $21,900 per year from DADC. *Id.* On January 8, 1992, Nee signed a DADC Employee Patent and Confidential Information agreement ('DADC Patent Agreement') and began working in Indiana at DADC [256, Ex. 4]. Under the DADC Patent Agreement, Nee agreed that:

In consideration of my employment or continuing employment in any capacity with Digital Audio Disc Corporation ('DADC') . . . and of the salary or wages paid for my services in the course of employment and for my being permitted access to information pertaining to the business of DADC, I agree:

(A) To promptly disclose to DADC and I hereby assign and agree to assign without further compensation, to DADC or its designee, my entire right, title and interest in and to each invention, technological innovation, including all rights to obtain, perfect and enforce patents and other proprietary interests therein, in which I participate during the period of my employment with DADC, whether or not during working hours, which pertain to any line of work or investigation by DADC or is aided by the use of time, material, or facilities of DADC, or in which DADC expresses an interest.

*Id.* On April 10, 1992, Nee assumed his position at SDT in Japan. Prior to Nee joining SDT, Nee received a commitment from DADC that (1) Nee's name would remain in DADC's organization

---

[6] Bracketed references from Target I are to exhibits filed in connection with the pending motions, which were also filed in Target I.

*while he was at SDT and (2) that after Nee finished his assignment in Japan he could return to*

*work at DADC . . . . When Nee was expatriated to Japan, it was with the understanding that he*

*would return . . . . While he was at SDT, Nee received part of his compensation from DADC and*

*received DADC benefits . . . .*

*In 1995, Nee transferred back to DADC as a Manager of Technical Support . . . .*

*Nee's last day of employment with DADC was March 31, 1998 . . . . On February 23, 1998, the*

*Vice President of Human Resources, Warren Maccaroni wrote Nee a letter, outlining the*

*discussion Maccaroni and Nee's boss Michael Mitchell had with Nee on February 19, 1998*

*about the elimination of Nee's position effective March 31, 1998 [296]. At the meeting, Nee*

*agreed to finish up any open projects with which he was involved and Maccaroni and Mitchell*

*told Nee that he was not required to report to work after March 31, 1998.* <u>*Id.*</u> *Handwritten*

*notes from this meeting record Nee's hire date at DADC as January 9, 1991 and indicate that*

*his termination is effective March 31, 1998.*

*On March 30, 1998, Nee sent a twelve page 'patent disclosure' document to his*

*attorney, Kurt Jones [256, Ex. 19]. The Patent Disclosure was entitled 'Metal Alloys For*

*Reflective And Semi-reflective Layer Of Optical Disc'.* <u>*Id.*</u> *The inventor is listed as Nee and the*

*assignee as Target.* <u>*Id.*</u> *The Abstract describes*

> *A copper or silver based alloy thin film is provided for the highly*
> *reflective or semi-reflective layer of optical discs. Alloy additions*
> *to silver include gold, palladium, copper, rhodium, ruthenium,*
> *osmium, iridium and platinum singly or in combination. Alloy*
> *additions to copper include silver, cadmium, gold, magnesium,*
> *aluminum, and nickel singly or in combination. These alloys have*
> *moderate to high reflectivity and reasonable corrosion resistance*
> *in the ambient environment.*

<u>*Id.*</u> *In the document, Nee describes the background of the invention, gives a summary of the*

*invention as well as a detailed description that includes several examples of various alloy*

*combinations of the elements listed in the Abstract, and asserts eighteen claims.* <u>Id.</u> *The*

*March 30, 1998 letter to his attorney that accompanied the Patent Disclosure asks the attorney*

*to 'make necessary corrections and proceed to file a provisional patent application to the Patent*

*Office'.* <u>Id.</u> *In the letter, Nee also asks the attorney to conduct a patent search 'as discussed*

*about a month ago when I visited your office.'* <u>Id.</u> *Nee finally requests a 'nondisclosure*

*agreement' or 'confidential agreement' because he is planning to contact different companies*

*'to try to reduce those ideas in the disclosure to practice.'* <u>Id.</u>

   *On April 2, 1998, Nee sent an email to three SDT employees saying that he*

*'designed a special metallic target' for the DVD 'that is significantly lower in cost than gold, but*

*will have similar reflectivity compared to gold, and with good corrosion resistance without the*

*problem of sputtering a semiconductor like silicon' . . . . In [an] April 9, 1998 letter to Dale*

*Butrymowicz ('Butrymowicz'), Nee told Butrymowicz that he had recently formed Target, which*

*was 'in the business of supplying special or custom sputtering targets for the optical disc*

*industry' [256, Ex. 16]. Nee also told Butrymowicz that 'a special metallic target is designed*

*that has similar reflectivity as gold, but the cost is substantially lower than gold, and without the*

*complications of silicon.'"* <u>Id.</u> *Nee was 'seeking a partnership with a major sputtering machine*

*supplier or a line integrator to develop this technology'.* <u>Id.</u> *On April 20, 1998, Nee's attorney*

*received the patent search results . . . . On April 27, 1998, Nee began a notebook after*

*reviewing the patents researched by his attorney . . . . On June 22, 1998, Nee filed his first*

*patent application, from which the '889 patent issued on December 28, 1999 [256, Ex. 5]. The*

*abstract for the '889 patent is identical to that of the Patent Disclosure except that the phrase*

*'singly or in combination' is removed from the list of alloy additions to silver and copper.* <u>Id.</u>

On September 26, 2000, DADC's counsel wrote to Nee claiming ownership of the '889 patent under the DADC Patent Agreement Nee had signed, assigning inventions or technological innovations in which he participated while a DADC employee that related to DADC's business to DADC [256, Ex. 14]. The letter asserted that Nee was a DADC employee through July 31, 1998 because he was on payroll and received benefits through that date. Id. Nee's attorney responded on December 7, 2000 disagreeing with DADC's position that Nee invented the subject matter of the '889 patent as a DADC employee [256, Ex. 15]. Nee's attorney asserted that Nee's last day of employment was no later than March 31, 1998 because under Indiana law the severance pay Nee received from April 1 through July 31, 1998 did not make Nee an employee for that time period. Id. The letter contended that 'unless [DADC] has reason to believe that Mr. Nee made his inventions before March 31, 1998 to possibly invoke the employment agreement, DADC has no reason to make claim to any of Mr. Nee's patents for which he makes application after March 31, 1998.' Id.

There are several other silver alloy patents in the chain between Nee's first patent, the '889 patent and the '503 patent at issue in this case; these include U.S. Patent Nos 6,280,811 (the '811 patent), 6,481,402 (the '402 patent) and U.S. Patent No. 6,764,735 (the '735 patent). The '811 patent was filed on November 12, 1999 and issued on August 28, 2001. See [256, Ex. 6]. The '402 patent was filed on September 13, 2000 and issued on September 17, 2002 . . . . The '735 patent was filed on March 4, 2002 and issued on July 20, 2004 . . . . The '503 patent was filed on January 15, 2003 and issued on September 14, 2004 . . . .

\* \* \*

Target filed this action on September 14, 2004, the same day that the '503 patent issued, alleging that Defendants willfully infringed the '503 patent. In its Second Amended

Complaint, Target asserted that DADC had no rights to its patents because 'Mr. Nee did not conceive of any of the inventions protected by United States Letters Patent Nos. 6007889, 6280811, 6451402, 6544616, 6764735, and 6790503 prior to March 31, 1998' . . . .  During his depositions, Nee likewise denied that he had the silver-alloy idea before his employment with DADC ended. For example, at his November 20, 2003 deposition, Nee gave the following answers:

> Q.   When did you first come up with the idea of using copper-based or silver-based alloys in optical media?
>
> A.   After I was laid off, between that time and the time I filed the patents.
>
> Q.   Okay. So that prior to leaving Digital Audio [DADC], you had not thought of using this process at all?
>
> A.   No.

[256, Ex. 20, pp. 48-49].  Similarly in his May 20, 2005 deposition, in response to a question about when he first had the idea for the primarily silver alloys in his patents, Nee answered by referencing his first entry in his notebook on April 27, 1998 [256, Ex. 21, p. 138].  When asked if that was the first time he thought about using silver in the manufacture of either the semi-reflective layer or reflective layer of optical storage medium, he answered yes again.  Id. Nee also stated that he did not think of any solutions when he first recognized the problems with respect to gold and silicon; when asked if that was true through March 31, 1998, Nee answered 'right' [Id., p. 85]. When asked about the April 1998 email saying he envisioned a 'better solution,' Nee said that he didn't envision anything at DADC [Id., p. 110].  Nee also denied that he conceived of any of his patents before April 1, 1998 [Id., p. 171].  When asked about when he disclosed the alloy to his attorney, Nee said it was about a month or two before filing the patent [Id., pp. 134-35].  The questioner then asked if that would have been sometime in April since the

'889 patent was filed on June 22, 1998. *Id.* Nee responded probably not April, but sometime in May. *Id.* Then Nee is asked 'Was it before you left DADC?' to which he responds 'Yeah.' *Id.* The errata sheet later served by Target's counsel upon the Williams Defendants changed Nee's 'Yeah' to 'No' because 'Mr. Nee left DADC on March 31, 1998, which is before the April 1998 date referenced in the prior question' [256, Ex. 24, p. 6].

On August 8, 2006, the Court compelled the production of three items on Target's privilege log. As a result, Target produced these documents designated as Attorney Eyes Only on October 17, 2006. The Defendants' attorneys therefore saw the March 30, 1998 Patent Disclosure and letter from Nee to his attorney, his attorney's letter to another attorney requesting a patent search and the results of the patent search for the first time approximately two years into the litigation."

On July 13, 2004, Williams and DADC (on behalf of itself and purportedly on behalf of other "Sony Companies") entered in to a License Agreement (Nash Declaration [256], Ex. 34) authorizing Williams to practice under the Nee patents, to the extent that DADC or the Sony companies had an ownership interest in those patents (id., §II(A)), and further provided that the license "shall survive any assignment or other transfer of the Sony Patent Rights by Licensor or any other Sony Company". Id., §VIII(A). However, the License Agreement expressly stated that DADC made no warranties as to its ownership of the Nee patents. Id., §IV(A).

In December 2008, Target and the "Sony Parties" entered into a "Settlement and Cross License Agreement" effective as of November 7, 2008 (Nash Declaration [256], Ex. 35) which provided, *inter alia*, that it "supersedes all previous understandings relating to the subject matter hereof, whether oral or written" (id., §17.2), and that Target "shall retain ownership of

the Nee patents" (id., §2.1), including all of the patents at issue in this action (id., Ex. A). The

Agreement defined "Sony Parties" to include Sony Corporation and DADC (id., §1.8(a), (c)). [7]


## ANALYSIS

A.    **The Williams Parties' Motion to Dismiss [255]**

    1.    **Target's Alleged Lack of Standing to Sue for Patent Infringement**

        The critical date for determining whether Target's has standing to sue for patent

infringement is June 8, 2009, the date of its most recently filed pleadings asserting infringement

claims [251, 252], since "it is well established that an amended [pleading] ordinarily supercedes

the original, and renders it of no legal effect." Dluhos v. Floating and Abandoned Vessel,

Known as New York, 162 F. 3d 63, 68 (2d Cir. 1998).

        "Thus, when a [party] files a [pleading] in federal court and then voluntarily

amends the [pleading], courts look to the amended [pleading] to determine jurisdiction."

Rockwell International Corp. v. United States, 549 U.S. 457, 473-74 (2007). *See also* Prasco,

LLC v. Medicis Pharmaceutical Corp., 537 F. 3d 1329, 1337 (Fed. Cir. 2008) ("the proper focus

in determining jurisdiction are the facts existing at the time the [pleading] *under consideration*

was filed") (emphasis in original).

        In seeking dismissal of Target's infringement claims in the California action, the

Williams Parties advanced essentially the same arguments which they assert in their pending

motion to dismiss, namely that Target lacks standing to sue for patent infringement because its

---

[7]    Although the 2008 agreement was executed by an officer of Sony Corporation rather than
DADC, it is well settled that the officer of a parent corporation can bind a subsidiary to a new agreement
which supersedes a prior agreement entered into by the subsidiary. *See* American Prescription Plan, Inc.
v. American Postal Workers Union, 170 A.D. 2d 471, 473 (2d Dept. 1991).

assignor, Mr. Nee, had previously assigned his rights in the patents to DADC pursuant to the DADC Patent Agreement, and that the misrepresentations made by Target and Mr. Nee concerning the timing of the discoveries leading to issuance of the patents should be sanctioned by dismissing Target's infringement claims.

In addressing the question of standing, Judge Carter stated that "the key issue is whether Nee's March 30, 1998 Patent Disclosure establishes that Nee had 'participated' in the 'invention' or 'technological innovation' that was patented in the '889 patent and, ultimately, the '503 patent, prior to leaving DADC."  Target I, supra, 2007 WL 66201689,*10.  He concluded that "genuine issues of material fact still exist as to three questions: 1) whether Nee was covered by the DADC employment agreement when he developed the invention embodied in the March 30, 1998 Patent Disclosure; 2) whether the March 30, 1998 Patent Disclosure describes the same invention as the '889 Patent or whether the '889 Patent is merely a 'slight improvement' over the March 30, 1998 Patent Disclosure; and 3) whether the subsequent patents are the same invention as the '889 Patent or mere slight improvements thereon. Accordingly, summary judgment . . . is inappropriate."  Target II, supra,  2008 WL 5002935, *21.[8]

Were the record before me identical to the record before Judge Carter, I would agree that there are factual issues as to Target's standing to claim patent infringement which must be resolved either at trial or in a pretrial evidentiary hearing pursuant to Rule 12(i) - and, as stated previously, at the time of oral argument I was leaning toward recommending that the court

---

[8]        Since the date of that decision, Target has now claimed infringement of additional patents. The Williams Parties argue all of the patents at issue are, at most, "minor and obvious variations of what is taught by the [March 30, 1998] Patent Disclosure" (Williams Parties' Memorandum of Law [258], pp. 16-17) and are therefore subject to the DADC Patent Agreement, whereas Target disputes that assertion. However, Target concedes that at least one claim in each of the '889, '811 and '384 patents are "arguably 'entirely within'" the teachings of Mr. Nee's March 30, 1998 patent disclosure.  See Target's Response [310], p. 9 and Williams Parties' Reply Memorandum [322], p. 12.

conduct an evidentiary hearing. However, upon further consideration of the November 7, 2008

"Settlement and Cross License Agreement" between Target and the Sony parties (including

DADC) (Nash Declaration [256], Ex. 35) - which did not exist when Judge Carter decided

Target I and Target II - I now conclude that there is no factual issue as to Target's ownership of

the patents at issue as of June 8, 2009, which is the critical date for this motion.

   The Williams Parties' attack upon Target's standing is based entirely upon the

DADC Patent Agreement (Nash Declaration [256], Ex. 4). However, §17.2 of the 2008

Settlement and Cross License Agreement expressly "supersedes all previous understandings

relating to the subject matter hereof". The subject matter of that Agreement includes ownership

of the patents at issue in this litigation. Id., §2.1 ("Target . . . shall retain ownership of the Nee

Patents") and Ex. A (listing as the "Nee Patents" 20 U.S. patents, including all of the patents at

issue in this litigation). To "supersede" means "to annul, make void, or repeal by taking the place

of". Black's Law Dictionary (8th ed. 2004). Thus, "when the parties to a contract enter into a

new agreement that expressly supersedes the previous agreement, the previous agreement is

extinguished." Health-Chem Corp. v. Baker 915 F.2d 805, 811 (2d Cir.1990).

   The Williams Parties argue that "for there to be a novation, the contract being

novated must actually exist and be in force at the time of the novation . . . . In this case, Nee's

employment with DADC was terminated over 11 years ago. As such, there was no existing

contract to be novated at the time Target and Sony executed the settlement agreement, and,

therefore, there can be no novation as a matter of law". Williams Parties' Reply Memorandum

[322], pp. 8, 9. This argument flies in the face of the DADC Patent Agreement, which expressly

states that it "survives my employment by DADC and does not in any way restrict my right or

the right of DADC to terminate my employment". Nash Declaration [256], Ex. 4.

Since DADC has renounced any claim of ownership to the patents at issue, and has stated that the agreement upon which that claim was premised has been superseded, I agree with Target's assertion that "at least since November 7, 2008, Target has had standing as the undisputed owner of the Nee patents to enforce them against continuing infringement", and that "federal question jurisdiction and standing clearly exist[ed] as of June 8, 2009 when Target filed its amended pleadings".  Target's Response [310], p. 25.

The Williams Parties further argue that "even if the settlement agreement was a transfer of ownership, Target still lacks standing because the Williams Parties were and are licensed to practice the Patents-in-Suit by virtue of the license granted by DADC".  Williams Parties' Reply Memorandum [322], p. 8, n. 4 (referring to the 2004 license from DADC (Nash Declaration [256], Ex. 34)).  That license, if valid, would not be extinguished by the 2008 Settlement Agreement, because it expressly stated that it "shall survive any assignment or other transfer of the Sony Patent Rights by Licensor or any other Sony Company".  Id., §VIII(A).

However, the fact that the Williams Parties may raise a "license" defense to Target's infringement claims[9] does not affect Target's standing to assert those claims in the first instance.  "The issue is not ownership; this is an action for patent infringement in which the defendant has asserted the defense of license.  Jurisdiction in the federal courts is not lost simply because the most efficient approach at trial may be to address the license defense first."  Pixton v. B & B Plastics, Inc., 291 F. 3d 1324, 1327 (Fed. Cir. 2002); Air Products and Chemicals, Inc.

---

[9]     "A licensee, of course, has an affirmative defense to a claim of patent infringement." McCoy v. Mitsuboshi Cutlery, Inc., 67 F. 3d 917, 920 (Fed. Cir. 1995), cert. denied, 516 U.S. 1174 (1996).  Although the Williams Parties refer to the license in their Reply Memorandum ([322], p. 8, n. 4), it is not the basis for their motion to dismiss. If and when it is pleaded as an affirmative defense (by way of a reply to Target's most recent counterclaims, or answer to its most recent third party complaint), it may then be considered.

v. Reichhold Chemicals, Inc., 755 F. 2d 1559, 1563-64 (Fed. Cir. 1985) ("That resolution of a question of state law [the existence of a license] may render federal questions moot does not deprive a federal court of subject matter jurisdiction where the plaintiff bases his claim upon, and seeks remedies under, the patent laws, even where the complaint anticipates a defense of license"). *See also* Asymmetrx, Inc. v. Biocare Medical, LLC, 2009 WL 577759 (Fed. Cir. 2009) (unreported).

Since the Williams Parties' motion to dismiss is based upon their claim that Target does not own the patents at issue, rather than their claim that they have been licensed to practice under the patents, I recommend that the motion be denied, without prejudice to the assertion of a license defense at a later date, whether by motion for summary judgment or otherwise.

If such a defense is asserted, among the issues to be determined will be whether the DADC Patent Agreement had been superseded by the Sony Patent Agreement. While the Williams Parties argue that "the subject matter of the [Sony Patent Agreement] agreement was limited to inventions that resulted from Nee's work at Sony's facilities in Japan" (Williams Parties' Reply Memorandum [322], p. 6), nothing in the language of that Agreement expressly limits its scope to Japan. In fact, both Sony and DADC claimed that it also applied to Nee's work at DADC's facilities in Indiana (Jones Declaration [297], Ex. L, answer to interrogatory 16), and that they owned the Nee patents by virtue of the Sony Patent Agreement. Id., answer to interrogatory 17. *See also* Target II, supra, 2008 WL 5002935, *4 ("Later, Sony uncovered the April 1992 Agreement and also asserted ownership of the '889 Patent under that agreement").

## 2. Target's Alleged Litigation Misconduct

In the alternative, the Williams Parties ask this court to exercise its inherent authority to dismiss Target's infringement claims as a sanction for its misrepresentations as to when Mr. Nee conceived of the ideas leading to the patents in dispute. Williams Parties' Memorandum of Law [258], pp. 18-25.

In addressing the same argument in the California litigation, Judge Carter stated that he was "deeply concerned about Nee's inconsistent statements regarding, *inter alia*, when he first conceived of his invention and the errata sheet changes made by Target's attorneys to the transcript of Nee's deposition", and observed that "the evidence before the Court regarding the way in which Target and its attorneys have conducted this action is disturbing".  <u>Target I</u>, <u>supra</u>, 2007 WL 6201689, *12.

He noted that "Nee continually denied that he developed the invention while at Sony.  Nee contends that he based these denials on the legal definition of 'conceived' in the patent context.  However, his deposition testimony could be interpreted both to mean that he did not legally conceive of the invention while at Sony, or that he did not think up the invention while at Sony.  If his statements are understood in the lay sense - i.e. that he did not come up with the idea for silver and copper alloy while at Sony-then they are directly contradicted by the March 30, 1998 letter and Patent Disclosure . . . .  Notably, Nee's DADC contract does not relate to inventions ultimately 'conceived of' while at Sony.  Instead, it relates to inventions in which Nee 'participated' while employed by DADC.  Accordingly, the ultimate date of 'conception' seems irrelevant.  Thus, Nee's deposition testimony could well be read in its lay sense, *and would appear to border on perjury.*" <u>Target II</u>, <u>supra</u>, 2008 WL 5002935, *14 (emphasis added).

Nevertheless, he concluded that a decision as to sanctions was not warranted in advance of trial. "While the Court is very concerned about the record of Nee and Target's misconduct, the Court does not believe that the drastic measure of dismissal is warranted at this time . . . . Therefore, the Court is holding in abeyance Defendants' Motion for Terminating Sanctions pending live trial testimony. The Court will re-visit whether terminating or monetary sanctions are warranted during and after the trial, which will give the Court an opportunity to observe Nee and evaluate his credibility in order to determine whether sanctions are warranted." Target I, supra, *12.

Although Target argues that "under the 'Law of the Case' doctrine, this court can modify the opinions or rulings of the California District Court" (Target's Post-Hearing Memorandum [341], p. 11), I see no reason to modify Judge Carter's decision to defer consideration of appropriate sanctions (if any) until trial. "The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons . . . . Under this doctrine courts are understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court." Ali v. Mukasey, 529 F. 3d 478, 490 (2d Cir. 2008).

Deferral of this issue until trial is particularly appropriate because, as the Williams Parties note, the "misconduct at issue must be central to the claim in dispute in order to warrant dismissal". Williams Parties' Memorandum of Law [258], p. 23. Since it has not yet been determined whether the DADC Patent Agreement is applicable to any issue in this action, it cannot yet be said whether Mr. Nee's misrepresentations (if any) concerning when he developed

the concepts giving rise to the patents at issue are "central to the claim in dispute" so as to warrant dismissal.

**B.      The Williams Parties' Motion to Stay Discovery [271]**

The Williams Parties also seek to stay discovery concerning patent infringement and damages pending resolution of the motion to dismiss.  However, since I have recommended that resolution of the motion to dismiss be denied, the motion to stay discovery should likewise be denied.  *See* <u>Pavone v. Gibbs</u>, 1997 WL 833472, *2 (E.D.N.Y. 1997) ("As the trial shall not be bifurcated, there is no reason to stay discovery").

**C.      Target's Motion to Strike Deposition Testimony [328]**

In moving to strike portions of the deposition testimony of SONY's representative, Michael Mitchell [256, Ex. 33, p. 339, lines 3-16] submitted by the Williams Parties in support of their motion to dismiss, Target argues that this testimony is inadmissible because Mr. Mitchell lacked personal knowledge concerning its subject matter, namely the circumstances concerning Mr. Nee's departure from DADC to work in Japan. Target's Objection [329], p. 2.  The William Parties respond that "as a Rule 30(b)(6) witness, Mr. Mitchell's purported lack of personal knowledge is irrelevant" (Williams Parties' Memorandum of Law [336], p. 2), because "the corporation on whose behalf the designee is testifying must prepare the designee so that he may provide knowledgeable and binding answers for the corporation".  <u>Id.</u>

While it is true that, even absent personal knowledge, a Rule 30(b)(6) witness may bind the party on whose behalf he testifies, the Williams Parties cite no authority for the

proposition that the party for whom he testifies may use that testimony on its *own* behalf, unless it is based upon his personal knowledge.

In any event, the extent to which Mr. Mitchell's testimony at issue is based upon hearsay, rather than upon his personal knowledge, is not entirely clear from the record. In view of my recommendation that the motion to dismiss be denied, Target's motion to strike the Mitchell testimony is denied as moot. Should the Mitchell testimony become relevant on the issue of whether a license was granted to the Williams Parties by DADC, my denial of the motion is without prejudice to renewal at a later date.

## CONCLUSION

For these reasons, I recommend that the motions to dismiss [255, 270] be denied to the extent that they seek dismissal based upon Target's lack of standing to sue for patent infringement, and deferred (until trial) to the extent that they seek dismissal as a sanction for Target's alleged litigation misconduct. Furthermore, I order that the motion to stay discovery [271] and the motion to strike testimony [328] are denied. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the clerk of this court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the clerk of this court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the district judge's refusal to consider the objection.


**SO ORDERED.**

DATED:        October 28, 2009

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge